IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

Valerie Lynn Wisniewski     PLAINTIFF

       v.     Civil No. 10-2091

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration     DEFENDANT

**MEMORANDUM OPINION**

**I.      Factual and Procedural Background**

Plaintiff, Valerie Lynn Wisniewski, appeals from the decision of the Commissioner of the Social Security Administration denying her claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(I) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act"). 42 U.S.C. §405(g).

Plaintiff protectively filed her DIB and SSI applications on June 26, 2006, alleging a disability onset date of April 28, 2006. T. 119. Allegations included diabetes, hepatitis C, blurry right eye and depression. T. 137. At the time of the onset date, Plaintiff was 52 years old and possessed a General Equivalency Degree (G.E.D.), having dropped out of high school in the 11th grade. T. 32. She had past relevant work as a hand packer and legal assistant. T. 46. Plaintiff's applications were denied at the initial and reconsideration levels. T. 89, 92, 97, 99. At Plaintiff's request, an administrative hearing was held in Clarksville, Arkansas, on February 22, 2008. T. 26-69. Plaintiff was present at this hearing and represented by counsel. Vocational Expert Joe Thomas also testified. Administrative Law Judge ("ALJ") Penny M. Smith issued a decision on July 16,

2008, finding that Plaintiff was not disabled within the meaning of the Act.  T. 87.  On April 30, 2010, The Appeals Council found no basis to reverse the ALJ's decision. T.1. Therefore, the ALJ's November July 16, 2008,  decision became the Commissioner's final administrative decision.

## II.   Medical History

*Examining/Treating Sources*

Plaintiff provided two records of treatment prior to her application for benefits:

On July 23, 2002, Plaintiff was seen at North Arundel Hospital Emergency Department in Glen Burnie, Maryland, complaining of chest pain, coughing and fever T. 200.  Chest x-rays showed no evidence of active cardiopulmonary disease.  T. 203.   E.R. notes indicate Plaintiff had a past medical history of diabetes and was "inconsistent with her insulin." T. 200.  Her blood sugar was 201[1] and her liver enzymes were SGOT/AST 87, SGPT/ALT 90[2].  T. 205.  She was diagnosed with non-cardiac chest pain and Type I diabetes mellitus and sent home that day with instructions to return for worsening chest pain, increasing shortness of breath, fever or vomiting.  T. 197.  She was referred for followup with Dr. Aiello and advised to continue her insulin as prescribed.  *Id.*  There are no records to indicate that she made or kept an appointment with Dr. Aiello.

On January 11, 2005, Plaintiff was admitted for a three day stay at North Arundel Hospital

---

[1] The American Diabetes Association criteria for diagnosis of diabetes mellitus is a fasting glucose level greater than or equal to 126 mg/dl after no caloric intake for at least eight hours. http://care.diabetesjournals.org/content/27/suppl_1/s5.full (last visited July 6, 2011).

[2] Hepatitis C is an infection caused by a virus that attacks the liver.  As is the case with Plaintiff, it is most commonly transmitted through blood, primarily when drug users share needles.    Merck Research Laboratories, *The Merck Manual of Diagnosis and Therapy* at 223 (18th ed. 2006).  The normal range of values for AST (SGOT) is from 5 to 40 units per liter of serum (the liquid part of the blood).   The normal range of values for ALT (SGPT) is from 7 to 56 units per liter of serum. http://www.hepatitis-central.com/hcv/labs/liverenzymes.htm  (Last visited July 6, 2011).

following a loss of consciousness and fall at her home. T. 212. While in the hospital she was the subject of cardiology, maxillofacial surgery, and neurological consultations. T. 207-211. Plaintiff's liver enzymes were "slightly elevated" (SGOT/AST 53, SGPT/ALT 60) and her random blood sugar was 401 upon admission, 255 upon release. T. 212, 222. Her final diagnoses were: acute syncope, comminuted fracture of the nose[3], hepatitis C, essential hypertension, diabetes mellitus, history of drug abuse in the past and poor dentition. T.213.

Plaintiff provided one record of treatment following her application for benefits:

On February 7, 2008, Plaintiff was seen at River Valley Christian Clinic[4] in Dardanelle, Arkansas. T. 294. She complained of chest pain after taking her anti-hypertension medication, pain in her right leg for two months and that she had been out of insulin for two days. *Id.* She was prescribed a different blood pressure medicine and sent home with a glucometer with instructions to continue to work on a diabetic diet, insulin dosage, walking, and medications. *Id.* Her blood sugar was high at 219 and her liver enzymes were elevated: SGOT/AST 156, SGPT/ALT 112. T. 296.

Following her application for benefits, Plaintiff was referred for three consultative examinations:

On July 27, 2006, Plaintiff underwent a "Mental Status and Evaluation of Adaptive Functioning" exam performed by psychologist Don Ott, Psy. D. T. 235-242. Dr. Ott noted that

---

[3] Plaintiff broke her nose in the fall.

[4] The mission of the River Valley Christian Clinic is to provide health care and spiritual guidance to anyone in the river valley who cannot afford access to traditional health care. http://rvchristianclinic.org (Last visited July 6, 2011).

3

Plaintiff was considerably overweight[5], most of her teeth were missing and she walked with a limp. T. 235. Plaintiff reported no history of outpatient treatment for mental or emotional disorders and was currently taking 10 mg Lexapro[6] every day. T. 236. Dr. Ott diagnosed her with Dysthymic Disorder[7] and noted her condition was "essentially the same after two years of antidepressant medication[8]. Significant improvement is unlikely without psychotherapy and lifestyle changes." T. 239. No specific limitations in the areas of concentration, persistence, or pace were observed. T. 242.

On September 12, 2006, Plaintiff underwent a general physical exam performed by Rex W. Ross, M.D. T. 270-276. He diagnosed her with Type I diabetes mellitus, depression, hepatitis C, cataract, possible diabetic neuropathy, chronic pain and swelling in left leg–possibly diabetes related. T. 276. He assessed moderate limitations on Plaintiff's ability to walk, stand, sit, lift and see. *Id.*

On July 12, 2007, Plaintiff underwent a second "Mental Status and Evaluation of Adaptive Functioning" exam performed by clinical psychologist Steve A. Shry, Ph.D. T. 286-289. By this time she had stopped taking her antidepressants, stating that Lexapro "helped, but it made [her] falsely happy." T. 286. During this exam, Plaintiff was irritable, flippant, vague, and tended to

---

[5] Plaintiff is 5'6" and weighs 210 lbs. T. 136, 159, 282, 287, 294.

[6] Lexapro® is a selective serotonin reuptake inhibitor indicated for acute and maintenance treatment of major depression disorder and acute treatment of generalized anxiety disorder. PDR Network, LLC, Physicians' Desk Reference at 1130 (65th ed. 2011).

[7] The essential feature of Dysthymic disorder is a chronically depressed mood that occurs for most of the day more days than not for at least two years. Individuals with Dysthymic disorder describe their mood as "sad" or "down in the dumps. *Diagnostic and statistical manual of mental disorders* 300.4 (American Psychiatric Association, ed., 4th ed. 2000). Dysthymic disorder and Major Depressive Disorder are differentiated based on severity, chronicity, and persistence. In Major Depressive Disorder, the depressed mood must be present for most of the day, nearly every day, for a period of at least two weeks. *Id*. At 374.

[8] She was diagnosed with depression by a general practitioner in 2004. T. 286.

ramble. T. 287. Dr. Shry suspected she was exaggerating her symptoms. T. 288. He diagnosed her with a history of poly substance abuse and personality disorder not otherwise specified (anti-social features). T. 289. Based on her interview involving past interactions with coworkers and others, Dr. Shry assessed moderate limitations in Plaintiff's ability to interact appropriately with the public, supervisors and coworkers and mild limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. T. 292.

Plaintiff reported that she has been dependent on heroin and has abused other street drugs. She spent a total of four years in prison on drug-related charges. T. 237.

After the ALJ hearing, Plaintiff underwent an ophthalmology examination at River Valley Christian Clinic. T. 304. The examination revealed a cataract in her right eye. The examiner noted her diabetes was poorly controlled and diagnosed her with myopia and legal blindness in her right eye. *Id.*

*Non Examining/Non Treating Sources*

On August 10, 2006, Dan Donahue, Ph.D., determined that Plaintiff has symptoms of a significant mental disorder that regularly interfere with adaptive functioning that, while serious, do not meet/equal a mental listing. T. 256. Dr. Donahue was of the opinion that Plaintiff could perform unskilled work. *Id.* He assessed the following functional limitations: restriction of activities of daily living: mild; difficulties in maintaining social functioning: moderate; difficulties in maintaining concentration, persistence or pace: moderate. T. 254. He assessed her functional capacity as being able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete. T. 260.

On September 18, 2006, medical consultant Jim Takach reviewed treating or examining source statements regarding Plaintiff's physical capacities and assessed the following limitations: occasionally lift and/or carry 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour work day, sit for a total of about 6 hours in an 8 hour work day, unlimited pushing and/or pulling. T. 263. Plaintiff could occasionally climb ramp/stairs, ladder/rope/scaffolds, balance, stoop. T. 264. Her near and far acuity, depth perception, accommodation, color vision and field of vision are limited. T. 165. Her exposure to extreme cold, extreme heat, wetness, humidity, noise vibration and fumes are unlimited but she should avoid concentrated exposure to hazards such as machinery and heights. T. 266. Dr. Takach affirmed that Plaintiff could do light duty. T. 269.

### III.    Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that

he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.    Discussion**

The ALJ determined that the claimant met the insured status requirements through June 30, 2010, that she had not engaged in substantial gainful activity since April 28, 2006, and that she had severe impairments of insulin dependent diabetes mellitus with neuropathy; depression; obesity; essential hypertension; hepatitis C; and cataract, right eye. T. 79. The ALJ found, however, that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. T. 82. The ALJ further found that Plaintiff's allegations regarding her limitations were not fully credible, and that

7

the Plaintiff retained the residual functional capacity to perform a wide range of light work. T. 84, 85.

Plaintiff filed this claim contending that the ALJ: failed to properly develop the evidence, failed to consider evidence which fairly detracted from her findings, failed to apply the proper legal standards and failed to satisfy the burden of proof at the 5th step of the Sequential Evaluation Process. Pl.'s Br. At 7, 9, 10, 15.

**Substantial Evidence Supports the ALJ's RFC Finding**

The ALJ found that the Plaintiff had the residual functional capacity to perform light work. T.84. Specifically, she found that she was able to lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand, and/or walk for a total of 6 hours out of an 8 hour workday; occasionally stoop, bend, crouch, crawl, kneel, balance, and climb ramps and/or stairs but never climb scaffolds, ladders, or ropes. She should never be exposed to extreme cold, heat, or wetness; unprotected heights, dangerous equipment, or machines; do no driving (secondary to syncope and vision); and do no work requiring fine visual acuity; however, she is able to finger and handle items the size of silverware. From a mental standpoint, she is able to perform activities with non-complex simple instructions that require little judgment; that are routine, repetitive, and learned by rote with few variables; where superficial contact is incidental to work with public and co-workers; and where supervision is concrete, direct, and specific. *Id.*

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual

8

functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). The Court notes that Plaintiff appears to place the burden of proof on the Commissioner. It is the claimant, however, who bears the burden of proving her physical restrictions and/or residual functional capacity. See *Geoff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

In developing the record, the Commissioner is required to obtain additional medical examinations and/or testing only if the record does not provide sufficient medical evidence to determine whether the claimant is disabled. See *Barrett v. Shalala*, 38 F.3d 1019 (8th Cir. 1994)(citing, in part, 20 C.F.R. 404.1519a(b)). *See also Dozier v. Heckler*, 754 F.2d 274(8th Cir. 1985)(reversible error not to order consultative examination when such evaluation is necessary to make informed decision). 20 C.F.R. 404.1519 a(b) identifies several instances in which additional medical examinations an/or testing is warranted. They include the following: (1) where the additional evidence needed is not contained in the records of the claimant's medical sources; or (2) where a conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved and the Commissioner is unable to do so by re-contacting the medical sources.

The ALJ made an exhaustive review of Plaintiff's medical records (those provided by Plaintiff and those provided by the Commission) and determined, after recording all her complaints and resulting diagnoses, that Plaintiff was under multiple severe impairments: insulin dependent diabetes mellitus with neuropathy, depression, obesity, essential hypertension, hepatitis C and cataract. T. 79. It is disingenuous for Plaintiff to argue that the ALJ did not consider the effects and

9

limitations of these conditions and their concomitant symptoms when she in fact determined that each diagnosis, separately and together, constituted severe impairments.

The ALJ's RFC is consistent with (and in fact more generous than) mental and physical RFCs from Dr. Donahue and Dr. Takach, respectively. While an RFC assessment from a treating doctor would be preferable, it is not an absolute requirement. At any rate, the record shows that Plaintiff did not seek advice or treatment from any doctors in the time leading up to or immediately after her claim of disability and in fact did not see a doctor at all until two weeks before her hearing. T. 294-304. Plaintiff was diagnosed with both diabetes and hepatitis in 1996, but did not produce any of the medical records from that diagnosis. As the Commissioner points out ,since there are no records of treating physicians, there are no conflicts between Agency and private doctors. D.'s Br. at 6.

The ALJ was put on notice at the hearing that Plaintiff was going to see an ophthalmologist at a later date and she agreed to hold the record open for the eye exam results. T. 57. The ALJ and the VE went to great lengths to narrow down occupational possibilities based on varying degrees of acuity. T. 59-64. The ALJ specifically considered the results of that examination (myopia and legal blindness in the right eye) in her opinion. T. 82. Plaintiff had already testified to her nearsightedness and thick floaters. T. 48. The diagnosis did not change the facts upon which the VE testified and the ALJ based her RFC.

Plaintiff contends that the ALJ failed to consider evidence which fairly detracted from her findings. Pl's Br. 9. She argues that the ALJ failed to consider her limitations brought about by fluctuations in blood sugar, problems with upper extremities, fatigue and obesity. *Id.* She points to no medical evidence that these conditions imposed any limitations on her ability to work, however.

At the hearing, Plaintiff's attorney questioned her about her blood sugar, eliciting testimony that her blood sugar fluctuates and she is getting used to new medicine and dosing. T. 50-51. She did not, however, testify to any effects her blood sugar has on her ability to work.

With respect to upper extremity functioning, none of Plaintiff's claims of impairment could be verified. According to Dr. Ross all her limb functions were acceptable except that she had difficulty walking on her left toe and could only do 1/3 squat. T. 274.

In her testimony, Plaintiff attributed her fatigue to her hepatitis C.  T. 51.  She did not, however, complain to any physician or seek treatment for fatigue. The only indication in the record that she suffered from fatigue is located in her Disability Determination For Social Security Pain and Other Symptoms form, where she checked "YES" in response to the question, "Do you suffer from unusual fatigue?" T. 168. She wrote that the date she first noticed it was "about Sept. 2002"). *Id.* Plaintiff's alleged disability onset date was April 28, 2006, and her last date of work was May 3, 2006, which means she continued to work full time for over 3 years, despite suffering from what she calls "unusual fatigue." *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)(Plaintiff worked for over four years with "extreme fatigue" but did not mention fatigue, or any other side effect of medication, when she quit her job; ALJ concluded that plaintiff's medication side effects were not significant enough to prevent her from working, and that her subjective complaints in general were inconsistent with the record).

Although Plaintiff's doctors noted that she was obese and urged her to lose weight, no physician indicated that Plaintiff's obesity limited her ability to work. *See also Forte v. Barnhart*, 377 .3d 892, 896 (8th Cir. 2004)(although treating doctors noted claimant was obese and should lose weight, none suggested obesity imposed additional work-related limitations, and claimant did not

testify that obesity imposed additional restrictions).

Plaintiff argues that the ALJ improperly substituted her own opinions about the medical evidence in establishing Plaintiff's RFC instead of relying on medical evaluations. The Court disagrees, for there was substantial evidence in the record to support the ALJ's conclusion that Plaintiff was not disabled. The ALJ is responsible for determining a claimant's RFC, a determination that must be based on medical evidence that addresses the claimant's ability to function in the workplace. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). In this case, there was substantial evidence in the record upon which the ALJ could make an informed decision. There were many pages of treatment records covering a multi-year period of time. There were results of medical tests and procedures. There were disability and function reports completed by the Plaintiff. There were reports from reviewing physicians. There was the transcript of a hearing at which Plaintiff was questioned by her experienced attorney and an Administrative Law Judge. The ALJ is permitted to issue a decision without obtaining additional evidence as long as the record is sufficient to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Absent unfairness or prejudice, which Plaintiff has not demonstrated, remand is not appropriate. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). A fair reading of the ALJ's decision supports a conclusion that the record was properly developed and that she properly considered all the evidence in reaching her decision of Plaintiff's residual functional capacity.

**The ALJ Properly Considered Plaintiff's Credibility**

Social Security Ruling 96-7p clarifies the two-step process by which the ALJ must evaluate symptoms, including pain, to determine their limiting effects on a claimant. See, also 20 C.F.R. §§

404.1529 and 416.929. First, the ALJ must establish whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms. SSR 96-7p. Once the ALJ finds that the conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* Whenever the intensity, persistence or severity of the symptoms cannot be established by objective medical evidence, the ALJ must assess the credibility of any statements made by the claimant to support the alleged disabling effects. The Ruling sets forth the factors that the ALJ must consider in assessing the claimant's credibility, emphasizing the importance of explaining the reasons supporting the credibility determination. The Ruling further directs that the credibility determination must be based on a consideration of all of the evidence in the case record. *Id.*

As part of the determination of RFC, after reviewing the medical records, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. T. 84-85. An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1332 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.

*Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* The issue is not whether Plaintiff suffers from any pain, but whether her pain is so disabling as to prevent the performance of any type of work. *McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996). In *Polaski,* the Eighth Circuit set forth the following pain standard:

> The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. 739 F.2d at 1322.

Questions of credibility are the province of the ALJ as trier of fact in the first instance. *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995). The ALJ need not discuss every *Polaski* factor if he discredits Plaintiff's credibility and gives good reason for doing so. If the ALJ gives good reasons for finding Plaintiff not credible, then the court should defer to his judgment when every factor is not explicitly discussed. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

The ALJ recognized the prevailing legal standard in considering Plaintiff's subjective complaints; specifically, the ALJ cited Social Security Rule 96-7p and took into account the *Polaski* factors. The ALJ's credibility analysis was proper. She made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints. Plaintiff's own reports concerning her daily activities undermine her claim of disability. The ALJ found that they do not suggest significant physical or mental restrictions. Evidence contained in the file indicates the

Plaintiff is able to care for her own personal needs, perform some household chores, play with pets, play computer games, prepare meals, walk, ride, shop, pay bills and manage money. T. 53, 54.152-159. There is nothing to indicate that the ALJ gave too much, or too little, weight to any of Plaintiff's activities.

With regard to the duration, frequency and intensity of her pain, the ALJ noted that psychological tests results indicated possible exaggeration of some symptomatology. T. 85.

As to the dosage, effectiveness, and side effects of Plaintiff's medication, the ALJ found that Plaintiff has been inconsistently compliant with treatment of her diabetes (consistently running out of insulin, forgetting to take pills on time). T. 85, 154. Plaintiff argues in her brief that the reason she is inconsistent with her insulin is that she cannot afford it. Pl.'s Br. at 10-11. The Court notes that despite a citation to Plaintiff's testimony for this proposition, she did not testify to that effect, rather she said that she is limited to the brands of medicine the clinic has available or can order for her. T. 57. Regardless, at the time of and subsequent to the ALJ hearing, Plaintiff was in fact under the care of River Valley Christian Clinic, at no cost to her. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). There is evidence that Plaintiff sought out low-cost or indigent medical services and that they were available and in fact provided to her.

Plaintiff testified that she does not want to take antidepressants (1) because they seemed to

make it worse when she was on them and (2) out of fear of possible side effects to her liver, but she told Dr. Shry that she stopped taking her antidepressant because it made her feel "falsely happy." T. 55, 85, 186.  Plaintiff testified that she would probably not undergo a liver biopsy because she would not go through with the prescribed treatment ("like chemotherapy"). T. 56. Physicians have consistently advised her to follow a diabetic diet, properly exercise, and take medications as prescribed.  In addition to offering inconsistent answers on the question of medication, Plaintiff's responses and reactions lead to the issue the ALJ pointed out that if the Plaintiff's impairments were of the severity she complained, she would likely be receptive to appropriate treatment measures and comply with such treatment.

The ALJ noted further with respect to Plaintiff's credibility that Plaintiff had been incarcerated on numerous occasions for drug related felony charges and convictions and had a lengthy history of substance abuse, for which she had received inpatient and outpatient treatment. T. 85.

For these reasons, the court finds that the ALJ's treatment of Plaintiff's subjective complaints conforms to the requirements of *Polaski*.  The ALJ's findings are supported by substantial evidence on the record as a whole.

**The ALJ Properly Relied On Vocational Expert Testimony**

The ALJ found that Plaintiff was not disabled because she was able to perform other work. She  based her determination largely on the testimony of the VE.  T. 86.  Ordinarily, the Commissioner can rely on the testimony of a VE to satisfy its burden of showing that the claimant can perform other work. *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008); *Porch v. Chater*, 115 F.3d 567, 571 (8th cir. 1997); *see also Guilliams v. Barnhart*, 393 F.3d 798, 804)(8th Cir.

2005)(stating that "[t]he commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers".)

Joe Thomas, a Vocational Expert, appeared and testified at the administrative hearing. T. 45-47, 58-68. He identified Plaintiff's prior relevant work as a handpacker as light, unskilled, and as a paralegal as light, skilled. T. 46. Mr. Thomas stated that Plaintiff was not able to return to her prior relevant work. T. 59. The ALJ posed a hypothetical question asking Mr. Thomas what jobs would be available for a person of the same age, education and work experiences as the Plaintiff, and provided the following physical and mental limitations:

> light exertional level
> able to lift and carry occasionally 20 pounds, frequently 10 pounds
> able to sit six out of eight hours
> able to stand and/or walk six out of eight hours
> no fine visual acuity due to blurry vision
> no computer work
> no driving, secondary to vision
> no climbing of scaffolds, ladders or ropes, secondary to vision
> keep away from unprotected heights, dangerous equipment or machinery
> avoid extreme cold, heat and wetness
> only occasional climbing of ramps, stairs, stooping, bending, couching, crawling, kneeling and balancing
> unskilled, non-complex, simple instructions, little judgment, of a routine, repetitive type, which can be learned by rote with few variables
> no more than superficial contact, incidental to work with the public and co-workers
> concrete, direct, specific supervision

The ALJ further refined the RFC to provide for Plaintiff's reduced visual acuity due to her poor vision, limiting her to seeing and handling items the size of silverware. T. 61. Mr. Thomas indicated that such a person would still be able to perform work as a bench assembler. T. 62.

The hypothetical questions posed by the ALJ in this case incorporated each of the physical

and mental impairments that the ALJ found to be credible, and excluded those impairments that were discredited or that were not supported by the evidence presented. Accordingly, the ALJ's determination that Plaintiff could still perform work that exists in significant numbers in the national economy is supported by substantial evidence.

**V. Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 13th day of July, 2011.

*/s/ J. Marschewski*

HON. JAMES R. MARSCHEWSKI

CHIEF U.S. MAGISTRATE JUDGE